## Hoopes's Appeal.

1. Goods at a testator's home, where he eats, sleeps and lives are his household effects unless he keeps them for traffic or merchandise.  Per Brewster, J.

2. A bequest of "household furniture" will pass the beds, &c., used by a testatrix who kept a boarding-school for the use of her boarding-scholars. *Id.*

3. Words of a will in their ordinary legal signification are taken to express the testator's intention, unless there be something either in the will or circumstances dehors to indicate that they were used in a different sense.

4. "Household furniture" in the will of a boarding-school keeper includes what is used for the comfort and convenience of the boarders as well as that used by members of the family or guests entertained without pay.

5. "Household furniture" being articles of trade of a cabinetmaker, &c., would not pass by these words, though his residence might be in the same building with his store.   And so of a hotel-keeper living in a different house.

6. The desks and other furniture of a school-room will not pass by "household furniture," although the school-room is in the residence of the school-keeper.

January 13th 1869.   Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.   WILLIAMS, J., at Nisi Prius.

Appeal from the Orphans' Court of *Philadelphia:* No. 214, to January Term 1868.

William Anna Hoopes kept a boarding and day school in the city of Philadelphia.   Her establishment required two houses to be thrown into one.   She furnished one room for her parlor, and another for her bed-room.   Everything outside of these apartments was used for the purpose of keeping up the school.   The furniture of her apartments was appraised at $1345.   The remaining articles of furniture used for her boarding scholars were sold for $4500.   The clause in her will under which this controversy arose was in these words: "I give and bequeath all my household furniture to my friend Rhoda W. Smith, she paying to my friend Susan A. Noble, of West Chester, if the latter be then living, the sum of $250."

There was also a residuary clause, as follows: "All the rest, residue and remainder of my property I direct to be converted into money and kept invested by my executors, and the interest thereof to be paid to the said Rhoda W. Smith during her life, and at her decease I will and direct all the capital thereof to be divided among all the grandchildren then living of David Townsend, of West Chester, share and share alike."   The residuary legatee contended before the auditor that under the words "household furniture" Miss Smith could only take such articles of furniture as the testatrix had at the time of her death for her own domestic use and convenience.   The residuary legatee therefore claimed the proceeds of the sale of all the beds and furniture for the use of the scholars.   The auditor, Isaac Hazlehurst, Esq., decided in favor of the residuary legatee, and Miss Smith excepted.

There was also an exception to the form of stating the account.

In the court below the following opinion was delivered by Brewster, J.

" The twelve exceptions which have been filed to the report of the auditor in this estate may, for the purposes of this opinion, be arranged under two classes.

" 1st. Those which present objections to the form in which the account has been filed and reported by the auditor.

" 2d. Those which raise the question as to the proper construction to be placed upon the third clause of the will of the deceased.

" The first class of exceptions may be disposed of by the remark that we do not find in the form of the account or the auditor's report thereon any sufficient ground of objection. We pass then at once to the consideration of the third clause of the will.

" The auditor has given the questions here presented a careful and patient investigation. His report has been prepared with great learning and industry, and we have only arrived at a different conclusion from that stated by him after considerable reflection and hesitation.

" The controverted clause of the will is in these words : ' I give and bequeath all my *house household* furniture to my friend, Rhoda W. Smith, she paying to my friend, Susan A. Noble, of West Chester, if the latter be then living, the sum of $250.'

" It was contended before the auditor by the counsel of Rhoda W. Smith that, by the term ' household furniture' all the articles of the household which were not consumed in their enjoyment, but which were required for the house, passed to the legatee under this bequest. On the other hand, the counsel for the residuary legatee contended that the expression ' household furniture' should be confined to such goods and furniture as were necessary to the personal comfort and convenience of the testatrix.

" The following, amongst other facts, are reported to us by the auditor : That William Anna Hoopes died in this city on the 14th day of March 1866, leaving no blood relations nearer than second cousins. She commenced keeping a boarding-school in this city in the year 1852. Occupying at first but a part of a house on Walnut street, she was so successful in her business as to be able to rent, at the end of a few years, an entire house in Locust street, and finally to take the adjoining house, into which she cut communicating doors, making one large mansion, where she had during the last year of her life thirty boarders and fifty day scholars. The furniture required for this establishment exceeded in value $6000. She occupied for her own purposes exclusively but two rooms, and the controversy in this case is as to the extent of the word ' household,' the residuary legatee claiming to circumscribe it to the portion of the premises the testatrix occupied for her

own use, and the exceptant contending that all the furniture, save the articles used in the school, passed to her.

"The auditor has decided in favor of the residuary legatee, and the specific legatee has excepted.

"It would seem strange to a layman that such a controversy should arise. The words 'household furniture' are not words of art, they find their place in the transactions of every-day life, and, save for the learning which has been expended upon their definition, would seem to be very intelligible even to the most limited comprehension.

"Without the assistance of a lexicon a school-boy would define a man's household the place where he holds house—his home. That which supplies it is its furniture. The home is not confined to the particular bed-room in which the master of the house sleeps; for it may include his rooms for guests and apartments he never enters. So too it may properly embrace a school-room, for he may teach in his parlor, where many physicians and dentists practise their professions. It is difficult, therefore, to understand how the particular use of a portion of a dwelling makes it any the less part of the household. Suppose this testatrix had taught a class in her own private parlor, could the residuary legatee claim that the chairs and tables therein were any the less household furniture? Or if the deceased had occupied with her boarders one large dormitory—as is frequently the case in large establishments—would the bed in which she slept have passed as 'household furniture,' but all the other beds have gone to the residuary legatee?

"It was admitted at the bar that the expression 'household furniture' in her policy of insurance, or her bill of sale, would have included everything in dispute. So too it was conceded that if she had stopped keeping school one day before she died it would have been very difficult for the residuary legatees to maintain their position. And it must also be admitted that if the bequest had been 'all my household and school furniture,' it would have passed not only all the books, desks, &c., called 'school furniture,' but also all the beds and other articles of household furniture used by the scholars.

"It will be observed that the word 'house' appears before the word 'household'—whether this was a mere repetition, or was introduced by design, was not argued.

"Having said thus much upon the reason and common sense of the case, let us turn to the authorities upon this subject.

"The text-books state the principle in a few words. They say: 'Household goods' will only include things in 'domestic use, and not what a testator has in the way of trade:' Ward on Legacies 217; 1 Roper on Legacies 225. The plain reading of this sentence would be decisive against the residuary legatees,

for no one would call the furniture of a scholar's parlor or bed-room goods kept 'in the way of trade' any more than the school-master would be styled a trades*man*.  But it is said that the cases cited in the treatises rule this point in favor of the residuary legatees.  We have therefore felt it to be our duty to examine them.  Franklin *v.* Countess of Burlington, 2 Vern. Rep. 511 (1705), was a bequest by the Earl of Burlington of 'furniture and pictures' of his three houses.  It was held that by these words 'the plate' passed.  The general question as to whether 'plate' will pass by a bequest of household furniture is also discussed by Mr. Raithby in his note to that report, but there is nothing therein approaching the question in this case.  The later case in the same volume, Lillcott *v.* Compton, p. 638, is to the same point, but merits a passing commendation for the brevity with which the reporter gives the whole case in a single line.

"Masters *v.* Masters, 1 P. Wms. Rep. 424 (1718), is simply to the point that a devise of all household goods will pass all house-hold goods owned by the testator at the time of his death.

"Nicholls *v.* Osborn, 2 P. Wms. 420, touches the question of plate.  Pratt *v.* Jackson, Id. 302 (1725), is the first of the cases cited which approaches this point.  There, by articles of marriage settlement, it was stipulated that the wife should have 'the house-hold goods, or utensils, or household stuff,' &c., of the husband at the time of his decease.  The husband, beside his house in London, furnished an hospital at Gosport for invalids.  Lord Chancellor King decreed that the wife was entitled to the per-sonal property at the hospital, but he was reversed in the House of Lords (3 Bro. P. C. 199), the objection to the ruling being that 'household goods' could not mean beds and sheets 'used at a place where the testator himself *never lived*, but the furniture was provided and the undertaking carried on by agents and ser-vants.'  In other words, the hospital was not his household.

"This case is also noted by Mr. Sanders (3 Atk. 62), where he tells us that the goods at the hospital were '*made use of by the government*.'  The case of Crichton *v.* Symes, 3 Atk. 61 (1743), is also foreign to this inquiry.  It turned upon the construction of a devise of 'goods wearing apparel'—Lord Chancellor Hard-wicke supplying the conjunction *and*, so as to make it read 'goods *and* wearing apparel.'  A rule of construction, which, if applied to this will, might possibly, as already hinted, relieve it of all difficulty by making it read 'all my house *and* house-hold furniture,' meaning thereby not only the furniture of the household in the sense of family, but all the *furniture in the house.*

"The case of Le Farrant *v.* Spencer, 1 Ves. Sr. 97 (1748), was a devise by an East India captain of 'all his household fur-niture, linen, plate and apparel whatsoever.'  The Lord Chancellor

directed the case 'to be sent to a master to distinguish what goods he had for his own domestic use, and what *for trade or merchandise.*' The circumstances of the case are not reported, but it is to be inferred that some of the testator's property claimed by the legatees had been kept '*for trade or merchandise,*' which can hardly be affirmed in this case.

"Kelly *v.* Powlett, 2 Amb. 605 (1763), was another decision upon the vexed point of plate passing as furniture, but in their opinion the court say, p. 609, 'household furniture has as general a meaning as possible. It is incapable of a definition. It is capable only of a description. It comprises everything that contributes to the use or convenience of the householder or ornament of the house.' And further : 'I do not rely on the circumstance of the plate being in common use; the keeping her chamber and not using the plate would not ·be an exemption, nor would any other occasional *nonuser.* The case where *nonuser* is an exemption must be like the case of Le Farrant *v.* Spencer, where the testator bought the plate to trade with.'

"The case of Cole *v.* Fitzgerald, 1 Simons & Stuart 189 (1823), turned upon a bequest of 'household furniture and other household effects.' Vice-Chancellor Sir John Leach held that this expression embraced 'all property in the house and *on the premises* intended for use, consumption or ornament. He accordingly gave to the legatee pistols, models, paintings, an organ, and even the parrot, books, wine and liquors.' He added, 'If the *hay-stack* was only for use, it would pass; if *for sale,* it would not pass.' Cornewall *v.* Cornewall, 12 Sim. 303, Gooch *v.* Gooch, 33 Maine 535, and Bunn *v.* Winthrop, 1 Johns. Ch. R. 329, apply to legacies of plate and jewelry.

"Manning *v.* Purcell, 31 Eng. Law & Eq. R. 452 (1855), was the last case cited. In it, as in Pratt *v.* Jackson, *supra,* the testator had furniture in two places, one his household, the other a betting-office miles distant. It was true that he 'sometimes slept at the tavern,' but it was in no sense his home. Lord Justice Turner, referring to Lord Hardwicke's ruling, said, the words 'household furniture' would only pass what the testator kept for his domestic and personal use. A number of cases are cited by Williams on Executors 1063, in support of the principle which he extracts from the authorities, viz., that by the term 'household goods' all articles of household 'acquired by a testator for his house, will pass to the legatee.' The exception as to trade or business is noted. In Carnagy *v.* Woodcock, 2 Munf. 239, the court applied the expression to 'everything tending to the comfort and accommodation of the householder.'

"In a late English case, Dean *v.* Gibson, 4 Law Rep. 3 Eq. Cas. 713, the devise was of personal property, but the testatrix

added, ' consisting of money and clothes.' Vice-Chancellor Wood held that this was merely a *falsa demonstratio*, and that not only the money and clothes but *all* the personal property passed to the legatee.

" We have thus gone through with the tedious and laborious task imposed upon us by this argument. There seems through this long array of cases to be but little, if any contradiction, and hardly the appearance of conflict. Other cases may perhaps be found upon this point, but if they were multiplied indefinitely, I apprehend that we would have to come back to the common sense of the case at last. Goods, miles away from a testator's dwelling, are not his household furniture. Goods at his home, under the same roof where he eats, sleeps and lives, are his household effects, unless he keeps them for traffic or merchandise. Then they are in no proper sense for the use of his household. But round his hearthstone he may have a family, large or small, of relatives, friends, guests, scholars, servants, or in the olden time retainers or even soldiers; they are all, in the ordinary acceptation of the word, a part of the household, and all the furniture is household furniture.

" Nor can I understand that the previous life of this testatrix can shed any light upon this question. That she had at the commencement of her professional labors but little of this world's goods is nothing to the point. That her merit and industry brought— as they always bring—success, and enabled her to increase her stock of furniture, takes from it nothing of its character as belonging to her household. Indeed, if such an argument has any place in the cause, we might turn it to the advantage of the specific legatee whose assistance through long years of toil had doubtless contributed its share to the success of this establishment, and thereby earned the gratitude of the employer and principal. But we have only to deal with this will as we find it. We cannot doubt that if this testatrix had made a bill of sale ' of all her household furniture,' the purchaser would have acquired a title to something beyond the contents of one bed-room and parlor. Nor can we believe that an insurance company which had underwritten ' the household furniture' in that establishment, would ever have been permitted to escape from paying for a loss upon the plea that their policy only covered the chairs and carpets of two apartments. But it must be admitted that this is all *house furniture*, and as that word appears in the will we cannot strike it out. Standing alone, it would carry the case in favor of this specific legatee, and it certainly loses none of its force by the tautology of the sentence. Interpreting this devise in the light of these practical suggestions, we cannot doubt that this bequest passed all the specific legatee has here claimed, and the

10 P. F. Smith—15

exceptions, from the 7th to the 10th, inclusive, are therefore sustained.

" The other exceptions are dismissed."

An appeal was taken from this decree to the Supreme Court by Anna T. Hoopes, one of the residuary legatees.

*G. Junkin,* for appellants.—" Household furniture" includes only things in domestic use, not those in way of trade : Ward on Legacies 215, 217; 1 Roper on Legacies 225, 253, Nicholls *v.* Osborn, 2 P. Wms. 420; Pratt *v.* Jackson, Id. 302; s. c. 3 Brown's P. C. 199; Manning *v.* Purcell, 31 Eng. L. & Eq. Rep. 452; 2 Williams on Exr's. 1017; Carnagy *v.* Woodcock, 2 Munf. 239; Cornwall *v.* Cornwall, 12 Simons 303; Gooch *v.* Gooch, 33 Me. 535; Brown *v.* Winthrop, 1 Johns. Ch. Rep. 329; Crichton *v.* Symes, 3 Atk. 61; Dean *v.* Gibson, 4 Law Rep, 3 Eq. 713; Le Farrant *v.* Spencer, 1 Ves. Sr. 97; Cole *v.* Fitzgerald, 2 Russ. Ch. C. 301. Libraries do not pass under the words " household furniture :" Bridgman *v.* Dove, 3 Atk. 201; Kelly *v.* Powlet, 2 Ambler 605; Porter *v.* Tournay, 3 Ves. 311.

It makes no difference whether the household goods or furniture are in the same house with the testator or elsewhere. The point to be determined is, whether they are really his household goods or furniture—held for his domestic use, comfort and convenience —or whether they constitute his stock in trade, or are the means or instruments by which he carries on his business or occupation.

*P. F. Smith* and *Meredith* (with whom was *George F. Smith*), for R. W. Smith, appellee.—" Household furniture" is the furniture in the place where a man has his home, which is not exclusively the place where he actually dwells, but that in any way connected with his dwelling-place : Webster *v.* Ross, 6 Wright 424. The testatrix was not in trade; she neither sold nor exchanged, nor traded in the articles which were claimed to pass under the will; they were not kept in the way of trade; they contributed to the use and convenience of her family, and so to her use and convenience as a *householder.* The articles claimed by the appellee were " household furniture :" Masters *v.* Masters, 1 P. Wms. 424; Nicholls *v.* Osborn, 2 Id. 420; Pratt *v.* Jackson, 2 Id. 302; s. c. 3 Brown's P. C. 199; Crichton *v.* Symes, 3 Atk. 63 note; Snelson *v.* Corbet, Id. 370; Le Farrant *v.* Spencer, 1 Ves. Sr. 97; Cole *v.* Fitzgerald, 1 Sim. & Stu. 189; Manning *v.* Purcell, 2 Eng. L. & Eq. 452; 1 Roper on Legacies, ch. 4, § 1, pl. 4, p. 203 (ed. of 1829) ; 2 Williams on Ex'rs., ch. 2, § 4, pp. 855 859 (ed. of 1841) ; Ward on Legacies 215, 29 Law Lib.

The opinion of the court was delivered, January 18th 1869, by

[Hoopes's Appeal.]

SHARSWOOD, J.—The words of a will, in their ordinary legal signification, must be taken to express the intention of the testator, unless there be something either in the will or circumstances *dehors* the will to indicate that they were used in a different sense. That the circumstances of the property and the testator with reference to it may be resorted to to assist the construction, is a principle perfectly well settled : 1 Jarman 363. What, then, is the meaning of the words " household furniture ?"    In that excellent old work, " A Treatise of Equity" (of which Henry Ballow is the reputed author, and which is the text of Fonblanque, so that with the elaborate notes which have been added by later editors, it has at length become, as has been well remarked, " a rivulet of text meandering through a wilderness of notes"), it is said that " household stuff is *instrumentum patrisfamilias domesticum et quotidianum :*" Book IV., ch. 1, § 11, p. 103. It proceeds to enumerate " tables, stools, chairs, carpets, hangings, beds, bedding, basins with ewers, candlesticks, all sorts of vessels serving for meat and drink, being of earth, wood, glass, brass or pewter, pots, pans, spits, and such like."    It comprises, as has been said in several cases, everything that contributes to the convenience of the householder or ornament of the house : Kelly *v.* Powley, Amb. 610 ; Cole *v.* Fitzgerald, 1 Sim. & Stu. 189 ; Carnagy *v.* Woodcock, 2 Munf. 239.    It is contended, however, that the circumstances in this case show that the testatrix used these words in a more restricted sense.    These circumstances are, that the testatrix kept a boarding-school ; that the greater part of the furniture in question was for the use of the boarders ; that they form a very large proportion of her whole fortune, and that a part only of the house in which she lived was furnished for her own use and comfort. Hence it is argued that the bequest should be confined to the articles so used by her.    I agree that the furniture of the schoolroom is not household furniture ; desks, stools, slates, inkstands, maps, globes, &c., cannot be brought within that category.    The fact that the testatrix occupied one of the rooms of the house in which she resided for the purpose of a school would make no difference.    But as to the remaining articles it is not easy to see how those employed for the comfort and convenience of boarders can be distinguished from such as are for the use of the members of the family, or of guests entertained without pay.    It cannot be pretended that these would not be included ; otherwise the words would be narrowed down by construction to articles used personally by the testatrix herself ; and for this there is neither reason nor authority.    It certainly cannot be affected by the size of the establishment.    A poor widow ekes out her livelihood in a small house by taking two or three boarders ; would not the furniture of her parlor and kitchen, as well as of her guest-chambers, pass by a bequest of her household stuff ?    If so, can it make any

[*Hoopes's Appeal.*]

difference that there are fifty or one hundred boarders? Where is the line to be drawn? No doubt if a cabinetmaker or upholsterer, or other tradesmen were to make a will in those words, articles in his store or shop answering to the description would not pass, though he might have his residence in the same building. They would be in the way of his trade. So, if the keeper of a hotel lived in a different house the words would admit of a different construction. This is the extent to which the authorities relied on by the appellant go. We concur, therefore, in the conclusion at which the court below arrived.

      Decree affirmed and appeal dismissed, at the costs of the appellant.